SIMPSON VS WILEY et al.

*Questions touching libel.*

1. The publication of a libel can not be established by a comparison of one paper, which is not proved to have been published, with another, published, but not produced, on the trial, nor its absence accounted for.
2. Admissions of a defendant, in a letter, as to the publication of a libel, cannot be proved, where the letter itself is not produced, or its absence accounted for.
3. Evidence of a *general impression*, that defendants are the editors of a paper, in which a libel is charged to be published—is not testimony that they are joint-partners and editors thereof.

In error to the Circuit Court of Dallas.

This action was trespass on the case, by Simpson, against Wiley, M'Guire and Henry, for the recovery of damages, for publication of a libel, in a certain paper, of which the defendants were charged to be proprietors and editors; and whereby the plaintiff was charged as having violated his duty, as a post master.

The defendants demurred to the declaration, which demurrer being overruled, they plead the general issue, and upon which a verdict was rendered for the defendants.

On the trial of the cause, a bill of exceptions was taken, which showed the following facts to have transpired on the trial.

On the trial of this cause, the plaintiff produced a witness, Dr. Hogan, who was sworn and examined.

The plaintiff produced and placed in his hands, a newspaper, entitled "Alabama State Intelligencer;" following which title, were the words, "by Wiley McGuire & Henry—Wednesday morning, April 13, 1831;" (which paper was referred to.) The witness stated, that previous to the thirteenth day of April, eighteen hundred and thirty-one, he took a paper of the above title, printed at Tuscaloosa; and that he took it after that period, and may have done so at that date, but could not say positively. Plaintiff then asked the witness, if the paper he held in his hand, bore a resemblance to the one he took from the office of the Alabama State Intelligencer. This question was objected to by the defendants; and the objection was sustained by the Court.

Plaintiff then asked the witness, whether it was the general reputation at Tuscaloosa, and other parts of the country, that defendants were partners, or joint editors, in the publication of the Alabama State Intelligencer. This question was objected to by defendants, on the ground that such facts could not be established, legally, by general reputation; and the Court sustained the objection.

The plaintiff introduced one Tarver as a witness, who said he was before, and on, the thirteenth of April, eighteen hundred and thirty-one, a subscriber, and took a newspaper, styled the Alabama State Intelligencer, printed at Tuscaloosa; that he believed he once paid the defendant, Wiley, a portion of his subscription for that paper. He was then asked, if the paper then taken by him, did, or did not, contain an article, the same as the one contained in the paper exhibited in Court; and whether the same was, or

SIMPSON *vs* WILEY et al.

was not, in all respects, similar to the one he then took from that office. The paper alluded to, purported to contain a copy of the article, charged against the defendants as a libel, and commenced—"Col. Richard M. Johnson has," &c. The defendants objected to the question being answered; because the paper the witness took, was not produced: and the Court sustained the objection.

The plaintiff further produced as a witness, Joseph J. Borden; who testified, that he had correspondent with Wiley, the defendant, as one of the editors of the Alabama State Intelligencer, and he received replies from him to such correspondence. To a question by defendants, witness answered, that such correspondence was in writing: whereupon, defendants moved the Court, that the evidence was inadmissible—the letters not being produced; and requested the Court so to pronounce, and that it should not go to the jury as evidence. The Court sustained the motion, and the evidence was directed to be withdrawn.

The witness, (Borden,) having stated, that he was post-mastor at Cahawba, and that the newspaper styled the Alabama State Intelligencer, came there, and that about the thirteenth of April, eighteen hundred and thirty-one—he was asked to look at the paper, (before mentioned, and the same attached to the bill of exceptions,) and say whether it resembled those which came to his office entitled as above. The defendants objected to this question being answered by the witness; and the Court sustained the objecton; and it was not answered.

Borden was further asked, if he had, or had not,

4P                28

written and sent to Wiley, the defendant, a letter, (of which a copy was purported to be given in the article contained in the paper presented, and to which he was referred, and which purported to be written by him, [Borden] to Wiley.) The answering of which was objected to by defendants. The Court sustained the objection, and it was not answered—the letter not being produced or accounted for.

The deposition of William T. Barry was offered to be read to the jury as evidence; but it was objected to by defendant, on the ground that a letter referred to by deponent, as signed Thomas H. Wiley, was not produced. The objection was sustained; and the Court excluded the deposition, which was attached, with the affidavit and notice upon which the commission issued, and was sought to be a part of the bill of exceptions.

To all which opinions, sustaining of motions, exclusions of evidence, and every other matter, as above set forth, plaintiff excepted; and asked for the same as his bill of exceptions.

Which was accordingly done, and the plaintiff took his writ of error.

HITCHCOCK, C. J.—This was an action brought by Simpson, against Wiley, et al., in the Circuit Court of Dallas county, for a libel.

The matter charged as libellous, is alleged to have been written and published by the defendants, in a paper called the Alabama State Intelligencer, printed at Tuskaloosa, under date of the thirteenth of April, eighteen hundred and thirty-one.

The questions presented by the record, arise upon

SIMPSON vs WILEY et al.

a bill of exceptions, taken by the plaintiff below. They are all of a similar character, and relate to the exclusion by the Court, of testimony offered by the plaintiff, to fix the publication upon the defendants. They are as follow—

1. A witness, Doctor Hogan, was produced, by whom he proved, that previous to the thirteenth of April, eighteen hundred and thirty-one, he took a paper called the "Alabama State Intelligencer," from the office of that paper, printed in Tuskaloosa; but whether he took it at that date, he could not positively state. He was then asked, if the paper presented to him, which was a paper styled the "Alabama State Intelligencer," following which words, were the words, " by Wiley, McGuire & Henry—Wednesday morning, April 13, 1831," bore a resemblance to the paper taken by him from the office. This question the Court decided to be illegal.

2. The witness was asked, whether "it was the general reputation at Tuskaloosa, and other parts of the country, that the defendants were partners and joint editors of that paper." This question was also decided to be illegal.

3. A Mr. Tarver was produced as a witness, who swore that he had paid Wiley, one of the defendants, for the "Alabama State Intelligencer." He was asked, whether the paper he paid for, did not contain an article, in all respects, similar to the one shewn to him. The paper received by the witness was not produced. This question was decided to be illegal.

4. A Mr. Borden was then produced, who swore, that he had corresponded with Wiley, as one of the editors of the "Alabama State Intelligencer," and re-

ceived replies from him. Such correspondence was in writing, and the letters not being produced, this testimony was excluded.

5. The witness stated, that he was post-master, at Cahawba, on the thirteenth of April, eighteen hundred and thirty-one, and that the newspaper above alluded to, came to that office. He was then shewn a number of that paper, dated the thirteenth of April, eighteen hundred and thirty-one, and asked whether the paper which was shewn him, resembled those sent to his office. This question was pronounced illegal.

6. He was then asked, if he did not write a letter to Wiley, a copy of which is purported to be given in the article contained in the paper shewn to him. This question was also decided to be illegal.

7. The deposition of William T. Barry was produced, to prove a publication by Wiley, in which he states, that he received a letter, signed Thomas H. Wiley, in which was enclosed a printed paper, (the libel declared on,) but the letter was not produced, for which cause the deposition was excluded.

A verdict and judgment was rendered for the defendant below ; the case has come here by writ of error, and the several exclusions of evidence, as above stated, assigned for error.

They present three points—

1. Can the publication of a libel be established by the resemblance of one paper, which is not proved to have been published, to another which has been published, but which is not produced, nor its absence accounted for.

2. Can a publication be proved by any admissions

in a letter, when the letter is not produced, or its absence accounted for?

3. Can a publication be proved by evidence of the general impression, or reputation, through the country, that the defendants were joint partners and editors of the paper?

The first, third and fifth questions propounded to the witnesses, relate to the first; the fourth, sixth and seventh, relate to the second, and the second question relates to the third point.

It is admitted, that before a libel can be read at the trial, it must be proved to have been published by the defendant, or by others, with his privity, and when this is attempted to be done by other, than direct and positive evidence, such as, that the witnesses saw the defendant circulate the paper produced; but when it is attempted by circumstancial proof, the party must proceed by the ordinary rules of evidence.

In relation to the three attempts, embraced by the first point, it is analagous to an offer to prove the paper by a comparison of hand-writings, with this additional objection, that the paper with which the comparison is to be had, was not before the jury. Admitting the evidence to have been received, it would not still have established the fact of publication by the defendants, as it would not have proved the publication of the paper produced by the defendants, which was the issue in controversy.

It is only necessary to say, on the second point, that the best evidence of the facts contained in the letters referred to, would be the production of the letters themselves. No notice was proven to have

been given to the defendants to produce, on the trial, the letters between Borden and Wiley, and the fact, that the post master general thought proper, for reasons of public policy, to withhold the letter received by him, will not authorise the Court to suspend the rule of evidence, and allow that which is secondary.

As to the third point, the evidence offered could amount only to *hearsay*, which belongs to another class of cases, and if proven, would not establish the main fact, to wit, the publication, by the defendants, of the paper produced on the trial.

It is true, that the connexion of the defendants with the "Alabama State Intelligencer," and that the paper produced was issued from that office, both of which facts, it was necessary to prove, might depend upon proof of many circumstances, independent of each other, yet each fact, or circumstance, must be established by evidence, legal in its character, and the difficulty of getting at the main fact, which, in England, has produced a statute upon the subject, does not authorise the Court to relax the established rules of evidence.

There being, therefore, in our opinion, no evidence of a legal character excluded, the judgment must be affirmed.