## GRIFFIN *vs.* ISBELL.

1. A sheriff who, after a seizure under attachment of the goods of the defendant, wrongfully releases the levy and abandons their custody, is guilty of a malfeasance for which an action will lie in favor of the plaintiff.

2. In an action against the sheriff for the injury done in causing, by his wrongful representations, property seized by him under legal process to be sold for less than its value, it is not necessary to aver that the representations were made maliciously: An averment that they were made falsely and fraudulently is sufficient.

3. Where the caption of a deposition begins thus—"Pursuant to the annexed commission to me directed, I have caused T. P., the witness, to come before me, a justice of the peace," &c. and at the conclusion of the deposition the answers are certified as sworn to "before me, a justice of the peace," &c., the words, "justice of the peace," are to be regarded as descriptive of the person merely, and not as designating the character in which the commissioner acted.

4. When a witness speaks of an "understanding" between himself and others, that they were to do a particular thing, the term used is to be taken as synonimous with agreement, and is the statement of a fact, not the expression of an opinion.

5. Where the point in issue is whether or not a sheriff has wrongfully appropriated property which he had seized under legal process, to his own use, proof that he purchased it from the defendant and paid him a part of the purchase money after the levy is admissible as tending to show the fact of such appropriation.

Error to the Circuit Court of Talladega. Tried before the Hon. John J. Woodward.

RICE, for the plaintiff in error:

1. The last two counts of the declaration are defective in

Griffin v. Isbell.

this, that it is not alleged that the words spoken by Griffin were spoken in the hearing of the bidders, or that they were spoken with malice.—Hill v. Ward, 13 Ala. Rep. 310.

2. Commissioners appointed to take the testimony of a witness in another State are *quasi* officers of the court, and are invested with power to administer the necessary oath. If they do not administer the oath, or give their certificate as *commissioners*, but as justices of the peace, they thereby repudiate the authority of the court and disregard their duty, and their acts are avoid.—Ulmer v. Austill, 9 Porter, 157; Herndon v. Givens, 16 Ala. 261; Dozier v. Joyce, 8 Por. 303; Campbell v. Woodcock, 2 Ala. 41; Kirk v. Suttle, 6 Ala. 679; Win. T. Co. v. Ridley, 8 Verm. R. 404.

3. The courts of Alabama cannot judicially know the official character of one who professes to be a *justice of the peace in Virginia*, nor that he had authority to administer an oath.— Chandler v. Hudson, 8 Ala. 366.

4. That portion of the fourth answer of Penn, relating to an "understanding between Griffin, Kennerly and the witness," is wholly inadmissible.

5. The sixth answer of Penn is also inadmissible, because it relates to a payment by Griffin to Kennerly after the sale of the negro. Whether Griffin made such payment, was no part of any issue in the cause.—Griffin v. Ganaway, 6 Ala. 148.

HARVARD LAW SCHOOL LIBRARY

WHITE, for defendant.

PARSONS, J.—1. Griffin was defendant in the Circuit Court, and filed a demurrer to each of the three counts in the declaration, but the demurrers were overruled. The first count states that Isbell, the plaintiff below, had obtained two attachments against the estate of one Kennerly, which the defendant, as sheriff of Talladega county, levied on a barouche and harness and a negro man, the property of Kennerly; and that Griffin afterwards wrongfully discharged the property from the levies and abandoned the custody thereof, whereby Isbell lost his debts. This count states a good cause of action, and we think the demurrer was properly overruled.

2. The second count states that the defendant levied the attachments on the same property and afterwards released and

13

discharged the levy, wrongfully and with intent to prevent the plaintiff from collecting his debt, and gave Kennerly a receipt against the plaintiff's demands, and thereafter procured Kennerly to deliver back to him the receipt, and that Griffin then caused other executions or legal process to be levied on the property and the same to be taken and sold, at public sale, in satisfaction thereof; that Griffin made the sale himself and falsely and fraudulently represented himself as the true owner of the said property, and that he was having the same sold to confirm his title; that Griffin became the purchaser, the property having been caused to be sold for less than its value; whereby the plaintiff was prevented from collecting his debts—and then it is repeated that by means of said false and fraudulent representations the property was sold at much less than its value, and that the plaintiff lost his debts. The counsel for the plaintiff in error insists that the demurrers to this and the third counts should have been sustained, because they do not allege that the words spoken by Griffin were spoken in the hearing of the bidders, or that they were spoken with malice, and he refers to Hill against Ward, 13 Ala. 310. But that was an action, not against the sheriff, but against a third person, for slandering the plaintiff's title. The action of slander, in all its varieties, is one of peculiar strictness, in respect of the pleadings and evidence. There is perhaps no other civil action which has been treated so strictly by the courts. The present is an action against the sheriff for malfeasance in office, and his representations at the time of the sale are stated in the declaration as part of the means by which he committed the wrong. We think the declaration in this respect is not bad on general demurrer, under our statute, for it appears from what is stated in each of the counts, that the representations were heard by those who attended the sale. It is not expressly stated that the words were spoken maliciously. According to some very respectable authorities it is not necessary, even in an action for slander, to use the word maliciously; for the word falsely or wrongfully is sufficient, as they show a malicious intent.—2 Chitty's Plead. 622, note u; 1 Saund. 242, note 2; and see 1 East. 563. So far as any question has been made upon the demurrers, the second and third counts are alike, and we think the demurrers were properly overruled.

3. The next objections to the ruling of the Circuit Court relate to the deposition of Thomas Penn. It is contended, in the first place, that the whole deposition ought to have been excluded; because it was taken before a justice of the peace in Virginia, who acted in taking the deposition in that official character and not under the commission, as is contended. But it appears, as we think, that he acted under the commission. His caption begins as follows:

STATE OF VIRGINIA, } Pursuant to the annexed commis-
   PATRICK COUNTY.  } sion to me directed, by, &c., I have caused Thomas Penn, the witness, &c., to come before me, a justice of the peace in and for the county of Patrick and State of Virginia, on, &c., and the said Thomas Penn being duly sworn on the Holy Evangelists, &c. The commissioner states, in conclusion, " The above answers were sworn to and subscribed before me, a justice of the peace in and for the county of Patrick and State of Virginia." The commissioner inserts the letters J. P. between his signature and seal. We think the words justice of the peace, &c., descriptive of the person, as if instead, he had said, " administrator of A. B." The words "pursuant to the annexed commission," plainly show the character in which he acted. If he had said pursuant to his office of justice of the peace he had taken the deposition, the objection might have been good.

4. The counsel has objected to two particular parts of this deposition: First to that part in which the witness states the fact of an "understanding" between Griffin, Kennerly and himself, that some of the property was to be returned to Kennerly, as stated in the deposition. We think the witness clearly used the word *understanding* as synonimous with *agreement*, intending to state the fact that such an agreement had been made. This answers the objection urged at the bar.

5. The next point of the deposition which was particularly objected to, is that in which the witness stated that Griffin, after purchasing the negro of Kennerly, paid to the latter over one hundred dollars, which appears by another portion of the deposition to have been part of the price of the negro. It is insisted that this payment was not a fact in issue, and that proof of it should have been excluded, on the authority of Griffin v. Ganaway, 6 Ala. 149; where it was held that an action against a

sheriff for failing to levy process could not be supported by proof that the money had been collected by him. The third count in the declaration, after stating the levy by Griffin on the barouche and harness and negro man, alleges that he, contriving to injure the plaintiff wrongfully and in violation of his duty, disposed of the property and took the same into his own hands, claiming it as his own, and has since retained it, with further allegations which are not material to the point now to be decided. The fact that Griffin purchased the property of Kennerly after he had levied the plaintiff's attachments upon it, as the property of Kennerly, was admissibe as tending to prove what was alleged, that Griffin took the property into his own hands, meaning that he took it into his individual possession, claiming it as his own, and not in his official character, and that he thus released and discharged the property from the levy; for it is alleged in another part of the declaration, that he did release and discharge it. The purchase certainly tends to prove these allegations; and the fact of the payment, if not to be considered as part of the purchase, is evidence of it; so that the purchase and the payment were evidence of facts that were in issue, and this distinguishes this case from the case of Griffin v. Gunaway. Let the judgment be affirmed.

CHILTON, J., not sitting.