SULLIVAN v. METROPOLITAN CASUALTY INS. CO. OF NEW YORK.

(Circuit Court of Appeals, Fifth Circuit. April 7, 1919.)

No. 3265.

1. LIBEL AND SLANDER ⊜⇒25, 41—PRIVILEGE—PUBLICATION—LETTER BY INSURER.

A casualty insurer's writing of a letter to a policy holder, setting out the grounds on which his claim was declined, and its delivery of the letter through its local attorney, the letter not being sealed, but open for the attorney's inspection, was privileged, though the contents of the letter were libelous, and there was no publication.

2. ATTORNEY AND CLIENT ⊜⇒102—LIBEL—UNAUTHORIZED PUBLICATION.

Where a casualty insurer sent its local attorney a letter declining to pay a policy holder's claim for loss, which letter was libelous, the insurer was not liable to the policy holder for its attorney's unauthorized act in showing the letter to a third person; the attorney alone being liable.

3. LIBEL AND SLANDER ⊜⇒112(1)—PUBLICATION OF LIBELOUS LETTER—SUFFICIENCY OF EVIDENCE.

In a policy holder's action for libel against a casualty insurer, evidence held not to justify finding that, when the insurer's attorney exhibited to a third person the insurer's libelous letter declining to pay the policy holder's claim, the attorney was interviewing the third person to get his statement in aid of the insurer's defense against the policy holder, so that the attorney's act in disclosing the letter was authorized, and constituted a publication.

Batts, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of Mississippi; Henry C. Niles, Judge.

Suit by J. B. Sullivan against the Metropolitan Casualty Insurance Company of New York. Judgment for defendant, and plaintiff brings error. Affirmed.

William H. Watkins and Garland Q. Whitfield, both of Jackson, Miss. (Hilton & Hilton, of Mendenhall, Miss., on the brief), for plaintiff in error.

R. G. Brown, of Memphis, Tenn. (Brown & Anderson, of Memphis, Tenn., on the brief), for defendant in error.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. The plaintiff in error sued the defendant in error for an alleged libel contained in a letter addressed to the plaintiff by the defendant, declining a claim for indemnity under a policy held by plaintiff with the defendant. At the conclusion of the evidence the District Judge directed a verdict for the defendant, and from the judgment thereon this writ of error is taken.

[1] By concession of counsel, the record presents the single question as to whether or not there was a publication of the alleged libel. The letter was dictated by an officer of the defendant who lived in New York. No claim is made that the dictation was a publication. It was inclosed, with a letter to an attorney of defendant, under one cover, addressed to the attorney at his post office, Mendenhall, Miss. The letter to the plaintiff was contained in a separate envelope, which was addressed to the plaintiff, but was not sealed. It is not contended by the plaintiff, as it could not reasonably be, that the transmitting of the letter to plaintiff, through the local attorney, was a publication of it. The transaction declining plaintiff's claim required the tender of a return premium. Proof was necessary of the delivery of the letter, as well as of the tender. The attorney was entitled to read the letter, to enable him to testify to the identity of the letter, delivery of which accompanied the tender. The writing of the letter, setting out the grounds upon which the claim was declined, and its delivery in the method indicated, was privileged, and afforded plaintiff no redress, though the contents of the letter were libelous.

[2] The dispute arises over the conduct of King, the attorney to whom the letter was transmitted for delivery to plaintiff. Plaintiff's evidence tended to show that King, while the letter was in his possession, as yet undelivered, showed and read the letter to one Patterson. This is the act relied upon by the plaintiff as constituting a publication. King denied showing or reading the letter to Patterson. The District Judge directed a verdict upon the idea that, whether King disclosed the contents of the letter to Patterson or not, his doing so, if he did so, was beyond the scope of the authority conferred upon him by the defendant, and did not bind the defendant.

The circumstances, as detailed by Patterson, are these: The letter addressed to Sullivan, the plaintiff, was dated April 19, 1916, and in due course of mail would have reached Mendenhall about April 22d.

Patterson testified the letter was shown him about April 25th or 26th, and before its delivery to the plaintiff by King. His testimony is to the effect that he casually visited King's office, as they were friends, and in the course of a friendly talk the claim of plaintiff against defendant for insurance came up, and incidentally King told Patterson of the receipt of the letter, and, to gratify his curiosity, showed and read it to him. No business reason provoked the act, according to Patterson's evidence. The visit and conversation and the showing of the letter were altogether social, if Patterson is to be believed.

The first question presented is whether, under Patterson's version, the showing of the letter by King to Patterson was within the scope of his authority, and a publication of the alleged libel. The solution of this question depends upon the extent of King's authority. King had made an investigation of plaintiff's claim for the defendant, and had made a report of his investigation to the defendant, before the letter was written. After receipt of his report by the defendant in New York, the letter declining the claim was written to plaintiff, and forwarded to King for delivery to the plaintiff, with the returned premium. King's authority was limited to delivering the letter and making the tender, if the showing of the letter occurred in April, as testified to by Patterson. King was afterwards retained to help prepare and defend the suit which plaintiff brought to recover on his indemnity claim against the defendant. The subsequent employment could not reflect on the extent of his authority in April. One who is employed to make formal delivery of a notice and legal tender of an amount has no duty but to deliver the notice and offer the money. Anything that aids in the performance of those duties is within the scope of his agency, and, though done improperly, binds his principal. Anything done by the agent, which has not and is not intended to have any purpose to accomplish the delivery and tender, is aside from the authority conferred on the agent, and binds the agent only, and not the principal. If King, in delivering the letter to plaintiff, had unnecessarily disclosed its contents to another, his act might be binding on defendant, since he was doing what he was instructed and authorized to do, though doing it improperly. If King showed the letter to Patterson in a spirit of gossip, with no purpose to accomplish its delivery to plaintiff or aid in doing so, then his act was without his authority, not in pursuance of his agency, and fastened responsibility only upon himself.

The fact that his agency required him to have custody of the letter cannot alter the result. If a loss of the letter, resulting from King's negligent custody of it, and the consequent disclosure of its contents, could constitute a publication of it by the defendant, that is not this case. The disclosure in this case was caused by King's act in departing willfully from the performance of the agency intrusted to him, and using the letter for a purpose of his own, disconnected with any duties he owed defendant. It was not negligence on the part of the defendant to intrust King with the letter for delivery to the plaintiff. It is not claimed that King was incompetent or untrustworthy, or that defendant had any reason to suspect him. Intrust-

ing a competent agent with even a dangerous instrument does not make the principal liable to a third person for an injury done him by the agent with the dangerous instrument, willfully and while using it to accomplish his own purposes, and not in the business of his principal. Giving an agent an axe makes the principal liable to third persons, injured by its use by the agent, negligently or willfully, in the performance of his duties as agent. It does not make the principal liable if the agent, in a personal quarrel, not connected with his principal's business, injures another by the use of his principal's axe. If the principal is without fault in intrusting the agent with custody, liability must depend upon the agent's action, complained of, being shown to be constructively the principal's, because done in pursuance of his business. If done aside from the principal's business, for the agent's private and individual purposes exclusively, though done with the principal's instrumentality, it fastens no liability upon him. This follows, whether the instrumentality is dangerous or harmless. In this case, if Patterson is to be credited, King had departed entirely from the course of his agency in showing the letter to Patterson. His act in doing so was his own, and not the defendant's, and did not constitute a publication by the defendant.

[3] The plaintiff contends that Patterson's evidence as to what transpired when he says the letter was shown him should not have been looked to exclusively by the District Judge, and that, taken in connection with King's evidence, the jury might have legitimately inferred that King was interviewing Patterson for the purpose of getting his statement, in aid of the defendant's defense in the indemnity suit, brought or to be brought by plaintiff against it, and that the letter was shown Patterson as an outline of the defendant's proposed defense, and to assist him in making such statement. If the record is open to this construction, a different conclusion might be required. We do not think a fair construction of Patterson's and King's evidence admitted of such a construction. Patterson testified that nothing was said or done indicating that his statement was desired, or that business rather than gossip was responsible for the interview and exhibition of the letter to him. King denies that he ever, at any time, showed Patterson the letter addressed by defendant to the plaintiff. In this respect Patterson and King are in direct conflict. As a possible explanation of what King assumed to be Patterson's mistaken testimony, King testified that, some months after delivery of the letter by him to plaintiff, he had a conversation with Patterson, after King's employment as attorney for defendant in the indemnity suit, in which he showed Patterson a letter from defendant, addressed, not to plaintiff, but to King, and which outlined the defendant's proposed defense to the indemnity suit.

The effect of this evidence of King was not to contradict Patterson's version of the conversation testified to by him, at which the letter to plaintiff was said to have been shown which King denied having had at all, but to put in evidence a different and subsequent conversation, for the purpose only of suggesting a possible source of confusion, which might account for what King considered Patterson's

mistaken testimony. Patterson was not examined in rebuttal as to whether or not he had ever had a conversation of the kind testified to by King, at which a letter from defendant to King was shown him. The interview which King testified he had with Patterson occurred at a different time, concerned a different subject-matter, and involved a different letter, and has no mark of identity with the interview that Patterson testifies to, except that at each a letter, though a different one, was exhibited. Patterson asserted, and King denied, entirely the occurrence of the first interview. King's evidence as to the subsequent interview did not serve to qualify what occurred at the first, because it described a separate and different one, but only to corroborate King's denial of the occurrence of the first, by suggesting the possibility of Patterson's having become confused by the second into mistakenly believing the happening of the first.

In this situation there was a direct contradiction as to whether or not the first interview occurred; there was no contradiction as to what happened at it, if it did occur, since Patterson's testimony was the only testimony that referred to and described it. The jury would not have been authorized to accept Patterson's evidence that the first interview did occur, disregard his evidence as to what transpired at it, and adopt, as having formed part of it, incidents which King testified occurred at another and different interview. The record is susceptible only to the construction that, if an interview occurred at which the letter to plaintiff was exhibited, it occurred as testified to by Patterson, and under circumstances, therefore, which did not make the defendant liable for the showing or reading of the letter alone complained of in the declaration. No charge is made in the declaration based on the publication of a letter written by defendant to King, and it would not justify a recovery, though libelous, for that reason.

Reaching the conclusion that the District Judge rightly directed a verdict for the defendant, the judgment is affirmed, with costs.

BATTS, Circuit Judge (dissenting). The evidence required the submission to the jury of the issue as to whether Attorney King showed the libelous letter to Patterson while discharging the duties and within the scope of his employment.