(129 So. 267)

**WEIR v. BROTHERHOOD OF RAILROAD TRAINMEN et al.**

6 Div. 222.

Supreme Court of Alabama.
Nov. 29, 1929.

Rehearing Denied May 1, 1930.

W. A. Denson, of Birmingham, for appellant.

Crampton Harris, of Birmingham, for appellees.

**THOMAS, J.**

The complaint proceeded for libel. After demurrers to the original counts, and the same were amended, those directed to counts 4 and 7 as amended were sustained. The individual defendants were stricken by the plaintiff, and the remaining defendants were Brotherhood of Railroad Trainmen and Grand Lodge of the Brotherhood of Railroad Trainmen. Demurrers were sustained to all pleas except the general issue, 7, 8, 10, and 13.

After plaintiff's evidence the remaining defendants offered no evidence, the jury returned a verdict for the defendants, and the appeal is from the judgment entered thereon and the overruling of motion for a new trial.

The evidence showed that Jennings met Roy C. Smith during 1923, who was deputy vice president of the Brotherhood of Railroad Trainmen in Birmingham, and he tried to induce witness, plaintiff, and others to disband the Switchmen's Union and join his brotherhood; that this was declined, and thereafter the Roy C. Smith letter he saw was a copy and not the real letter of Smith to Lee, and it had copy of letter to Morey that was to be kept confidential. The proprietor of the Hotel Grenada stated that the name of Roy C. Smith appears on his register of November 4, 1923, and witness Schulhoefer, an expert on handwriting, testified that the Roy C. Smith signatures on the hotel register with the two signatures on the letter exhibited "are all the same signatures"; and the signature of W. G. Lee on the letter to Morey and the register receipts of the post office are the same. Witness stated the rubber stamp signature was the same, though it may have been affixed· by some other. person than Mr. Lee. And the Roy C. Smith letter, inclosure, and W. G. Lee letter were admitted in evidence. Mr. Jolley stated that Lee's official correspondence with him was by rubber stamp signatures and with pen and ink, and were similar in appearance.

Witness Parker testified that he was working for the Louisville & Nashville Company in December, 1923, and a copy of the Smith letter came to him by mail; he did not examine the postmark, and could not tell who mailed the same; that it caused Mr. Goad to make an investigation as chief inspector and special agent. The letter was read in evidence. It was of date of December 12, 1923, and stamped received by Grand Lodge December 14, 1923, office of president, Brotherhood of Railroad Trainmen. The letter will be further adverted to in the opinion.

The witness Cowan, special agent for the Frisco Railroad, testified that a letter in substance the same as the Smith letter "was brought" to him, February 18, 1924, attached to a note from the general superintendent of joint terminal (in Birmingham), and was not delivered to him by Smith or by Lee; that he did not know "how it was that the Switchmen's Union got hold of a private letter in the files of Mr. Morey"; that he made an examination thereof, as requested by that superintendent.

This Lee letter was authenticated by rubber stamp signature; it contained the words "report made to me by Brother Roy C. Smith, organizer, * * * during his recent assignment" to the district in which was the Birmingham terminal, and refers to "Brother Roy C. Smith, organizer."

There is no evidence to the effect that the stenographer who took dictation of the Lee letter ever saw or read the Smith letter or attached the two documents. As indicated, the witness Parker testified that the letter from Smith to Lee was brought to his attention during the month of December, 1923; that he "received it through the mail," did not "remember from whom he received the letter," and "did not look at the postmark"; that investigation was made of the letter by Mr. Goad, chief inspector and special agent of the Louisville & Nashville Railroad Company, in December, 1923, or January, 1924.

We have indicated that Cowan testified that the letter causing his investigation was that in substance as the Smith letter; that it came to him, not from one ·of the defendants or their agents, but from the general superintendent of terminals at Birmingham; nor was the letter delivered to him by Smith or by Lee; and that he did not know how the Switchmen's Union got hold of the letter from the files of Mr. Morey; said the letter was passed to him, but did not state by whom.

Plaintiff testified that after the, investigation of the communication of Smith, he was demoted about March 25, 1924; that theretofore he was "on duty as foreman for the Frisco Railroad"; had been requested and then threatened if he did not discontinue his

association with the Switchmen's Union; that after the investigation the assistant general manager of the Frisco Railroad came to Birmingham and called plaintiff and Mr. King to his car and stated he was there to "investigate the charges contained in the Roy C. Smith letter." He gave them to understand they could not "remain in the employ of the Frisco Railroad as yardmasters and remain members of the Switchmen's Union of North America"; that he told said official he had never permitted his affiliations to conflict with his duties to the company, and that was an acknowledged fact, as was vouched for to Mr. Sisson by the superintendent of Birmingham terminals; and Mr. Sisson said he was friendly and told the boys they "ought not to take exception to that Roy C. Smith letter." This occurred before plaintiff's actual demotion, of which he was informed by the yardmaster, Mr. Brown, about three weeks later. Plaintiff further testified that he was not discharged from service, but was given a position not so desirable or lucrative; that Mr. Morey did not give him this letter; that he did not know how his union got the letter, and did not know that his union published it; that "apparently" copy of the letter came to him from Buffalo, N. Y.; that he could not testify that Roy C. Smith, himself, handed that letter to any one; he did not know how his (Switchmen's) Union "got that letter out of his (Morey's) possession."

Mr. Goad, as special agent (in 1923–24), received the Roy C. Smith letter from the superintendent of that division of the Louisville & Nashville Railroad Company, for investigation. The return receipt cards of the post office for registered articles, receipted for by W. G. Lee, as addressee, and the Brotherhood of Railroad Trainmen addressee by W. G. Lee, president, are referred to in testimony and were in evidence. The handwriting expert testified that in his judgment they were the same as the stamp signature to the W. G. Lee letter.

The evidence further showed that members of the Switchmen's Union wore pins with the letter "S" thereon; that said emblem resembled a "snake," and said members were often called in railroad circles the "snakes," as applying or as generally understood among railroad people as the Switchmen's Union. Such is the effect of the testimony of Mr. Cowan. As to this the witness Jennings said that the pin bore the letters "S. U.," and did not look like a snake, but had heard the members of such union "referred to locally as snakes," and that outsiders had referred to them as snakes. The plaintiff, as witness, replied to the question, "that emblem or button was a snake head and a snake tail," and was the emblem of said union in 1924. That same witness stated that he had seen articles published in the magazine of the order as "agitators," and Cowan testified the meaning of the word "dynamiter" as applied to that business was that of "a radical, an agitator," one who made "fiery speeches" or whose "utterances were calculated to incite trouble"; that "a dynamiter" was a way of designation or reference to a speaker who "had the force" and "habit" of "stirring things up in a meeting."

We have indicated the evidence in which Mr. Sisson reminded plaintiff and King that they could not retain their positions as yardmasters of his road and belong to said Switchmen's Union of North America; that when plaintiff refused to resign his membership in said union, he was about three months later relieved as yardmaster, but was not discharged; was relieved from the service of said corporation as extra yardmaster; that he retained his service and seniority as switchman, but was not allowed to hold the official position indicated.

██ To prove libel there must be *publication* within the venue of the action to one or more persons other than the parties. Age-Herald Co. v. Waterman, 188 Ala. 272, 66 So. 16, Ann. Cas. 1916E, 900; Age-Herald Co. v. Huddleston, 207 Ala. 40, 92 So. 193, 37 A. L. R. 898; Roberts v. English, 155 Ala. 414, 46 So. 752; Penry v. Dozier, 161 Ala. 292, 49 So. 909. It is further established that merely to compose or write a libel is not a "publication" within the requirements of the decision on libel. Weir v. Hoss, 6 Ala. 881, 888; Marion v. Davis, 217 Ala. 16, 114 So. 357, 55 A. L. R. 171: Age-Herald Co. v. Huddleston, 207 Ala. 40, 92 So. 193, 37 A. L. R. 898.

█ Otherwise stated, although the defendant uttered and originally published the alleged slander, *if he was not responsible for its repetition*, if not done at his instance, he would not be liable for damages thus occasioned. Donaldson v. Roberson, 15 Ala. App. 354, 357, 73 So. 223; Hereford v. Combs, 126 Ala. 369, 380, 28 So. 582.

██ If plaintiff failed to prove publication in Alabama, as alleged in his complaint, the defendants were entitled to the general affirmative charge. It is therefore important that we note how publication may or may not be shown. It is declared that publication may not be done or established by rumor or report, Donaldson v. Roberson, 15 Ala. App. 354, 73 So. 223; Hereford v. Combs, supra; nor by the act or declaration of a stranger without the consent or procurement of the defendant, Roberts v. English, supra; Age-Herald Co. v. Waterman, 188 Ala. 272, 66 So. 16, Ann. Cas. 1916E, 900; Weir v. Hoss, supra; nor by the act or connivance of a plaintiff, White v. Newcomb, 25 App. Div. 397, 49 N. Y. S. 704; Richardson v. Gunby, 88 Kan. 47, 127

P. 533, 42 L. R. A. (N. S.) 520; Nott & Wife v. Stoddard, 38 Vt. 25, 88 Am. Dec. 633. And in Simpson v. Wiley, 4 Port. 215, it was declared that *publication* of a libel cannot be established by *comparison* of one paper, which is not proved to have been published, with another published, but not produced on the trial nor its absence accounted for. And where publication is sought to be shown by an agent, it does not bind the principal as a publication within the decisions as to libel, unless the act of such agent was within the line and scope of the agent so acting or employed. Sullivan v. Metropolitan Casualty Ins. Co. of N. Y. (C. C. A.) 256 F. 726, 728, 729. See also National Park Bank v. L. & N. R. Co., 199 Ala. 192, 74 So. 69, for analogous holding as to conspiracy.

In the case of Sullivan v. Metropolitan Casualty Ins. Co. of N. Y., supra, the pertinent observation is made by Judge Grubb, as follows:

"The first question presented is whether, under Patterson's version, the showing of the letter by King to Patterson was within the scope of his authority, and a publication of the alleged libel. The solution of this question depends upon the extent of King's authority. King had made an investigation of plaintiff's claim for the defendant, and had made a report of his investigation to the defendant, before the letter was written. After receipt of his report by the defendant in New York, the letter declining the claim was written to plaintiff, and forwarded to King for delivery to the plaintiff, with the returned premium. King's authority was limited to delivering the letter and making the tender, if the showing of the letter occurred in April, as testified to by Patterson. King was afterwards retained to help prepare and defend the suit which plaintiff brought to recover on his indemnity claim against the defendant. The subsequent employment could not reflect on the extent of his authority in April. One who is employed to make formal delivery of a notice and legal tender of an amount has no duty but to deliver the notice and offer the money. Anything that aids in the performance of those duties is within the scope of his agency, and, though done improperly, binds his principal. Anything done by the agent, which has not and is not intended to have any purpose to accomplish the delivery and tender, is aside from the authority conferred on the agent, and binds the agent only, and not the principal. If King, in delivering the letter to plaintiff, had unnecessarily disclosed its contents to another, his act might be binding on defendant, since he was doing what he was instructed and authorized to do, though doing it improperly. If King showed the letter to Patterson in a spirit of gossip, with no purpose to accomplish its delivery to plaintiff or aid in doing so, then his act was without his authority, not in pursuance of his agency, and fastened responsibility only upon himself.

"The fact that his agency required him to have custody of the letter cannot alter the result. If a loss of the letter, resulting from King's negligent custody of it, and the consequent disclosure of its contents, could constitute a publication of it by the defendant, that is not this case. The disclosure in this case was caused by King's act in departing willfully from the performance of the agency intrusted to him, and using the letter for a purpose of his own, disconnected with any duties he owed defendant. It was not negligence on the part of the defendant to intrust King with the letter for delivery to the plaintiff. It is not claimed that King was incompetent or untrustworthy, or that defendant had any reason to suspect him. Intrusting a competent agent with even a dangerous instrument does not make the principal liable to a third person for an injury done him by the agent with the dangerous instrument, willfully and while using it to accomplish his own purposes, and not in the business of his principal. Giving an agent an axe makes the principal liable to third persons, injured by its use by the agent, negligently or willfully, in the performance of his duties as agent. It does not make the principal liable if the agent, in a personal quarrel, not connected with his principal's business, injures another by the use of his principal's axe. If the principal is without fault in intrusting the agent with custody, liability must depend upon the agent's action, complained of, being shown to be constructively the principal's, because done in pursuance of his business. If done aside from the principal's business, for the agent's private and individual purposes exclusively, though done with the principal's instrumentality, it fastens no liability upon him. This follows, whether the instrumentality is dangerous or harmless. In this case, if Patterson is to be credited, King had departed entirely from the course of his agency in showing the letter to Patterson. His act in doing so was his own, and not the defendant's, and did not constitute a publication by the defendant."

■■ The legal responsibility of the defendants for the action of Smith in writing the letter, or any publication of the same by Smith to any person, is not shown. The letter was not dictated through a stenographer, who transcribed the same, which fact as publication has been made the subject of several decisions of this court. It bore the date indicated, on Terminal Hotel, Atlanta, Ga., stationery; has a signature by Roy C. Smith; no evidence or envelope showing when, where, or that it was ever mailed or delivered to W. G. Lee, or to any person,

by Roy C. Smith. It was addressed to Lee at Cleveland, Ohio, on the stationery of the Grand Lodge of Brotherhood of Railroad Trainmen, and did not purport to be dictated. The letter to defendant's official, Mr. Morey, was subscribed by a stamped signature of "W. G. Lee," and purports to have been dictated in Cleveland, Ohio. The evidence does not show that he read the Smith letter; that is, other than as may be implied in the wording of the "confidential" letter to that other official of defendant at Springfield, Mo., or that it was Mr. Lee who dictated the letter dated December 18, 1923, at Cleveland to Morey, its chairman of general committee for Frisco System, or how the letter with the inclosure went to him from Cleveland, Ohio. That is, the evidence is silent as to who affixed the rubber stamp upon the same, or attached the Smith letter, if it was so attached, and in so doing read or understood the contents thereof. This evidence, when considered with the further fact, that copies thereof were in the possession of agents of the Louisville & Nashville Railroad Company or an official of the San Francisco Railroad Company, does not establish the *fact of publication in Alabama* by defendant of the alleged matters made the foundation of the suit to one or more persons other than the parties, to some third person. Penry v. Dozier, 161 Ala. 292, 49 So. 909; Roberts v. English Mfg. Co., 155 Ala. 414, 46 So. 752.

▮▮ Libelous matter uttered through the mails is actionable either at the place of posting or at the place of receipt by the addressee. Kenney v. Gurley, 208 Ala. 623, 95 So. 34, 26 A. L. R. 813. The evidence does not show the letter in question was mailed; nor does the evidence show that Smith published the letter to any third person. He had the right to make, under the qualified privilege rule, communications to his principal. Phillips v. Bradshaw, 167 Ala. 199, 52 So. 662; Culver v. Ala. Midland R. Co., 108 Ala. 330, 18 So. 827; Collins v. M. & O. R. Co., 210 Ala. 234, 97 So. 631. This did not constitute publication without other evidence. 36 C. J. 1265, § 250.

In Ferdon v. Dickens, 161 Ala. 181, 187, 198, 49 So. 888, the alleged libelous letter was dictated to the stenographer, who copied, signed, and mailed it in Mobile, where the suit was brought. Berry v. City of N. Y. Ins. Co., 210 Ala. 369, 371, 98 So. 290; Newell on Slander & Libel (3d Ed.) § 885, p. 387 et seq.

The complaint, as amended, alleges the date of publication as December 12, 1923, which is the date of the Smith letter, and not that of the date of the letter to defendant's official Morey. The letter in question is from the Terminal Hotel, Atlanta, Ga., bore the date of December 12, 1923, was to Mr. W. G. Lee, president of the Brotherhood of Railroad Trainmen, Cleveland, Ohio, and appears not to have been dictated; and the evidence does not show that it was so dictated. The failure of the usual stenographic initialing would tend to show that it was not dictated. The letter by W. G. Lee to Mr. F. W. Morey, chairman, general committee, Frisco System, 709 Woodruff Building, Springfield, Mo., marked "Confidential," was dictated. It did not copy the Smith letter or report; it merely forwarded the same therewith, with the consent that if Morey felt justified in reaching President Kürn, or the general manager of the Frisco, and reading to him any part of the inclosed report, he had Lee's "permission to do so, with the understanding, however, that the information will be treated strictly in confidence."

▮ The tendencies of evidence of Weir, the plaintiff, were that he received, within the state, copy of the alleged Smith letter mailed to him from a point without the confines of Alabama, and that he showed it to Jennings. This was not the publication within the libel decisions. The fact that he received a copy from such distant point, and exhibited same to Jennings in Jefferson county, and that after said investigation of his membership in said union, he was then discharged, did not make publication there on which he may found his claim for damages. Shepard v. Lamphiar, 84 Misc. Rep. 498, 146 N. Y. S. 745; Youmans v. Smith, 153 N. Y. 214, 47 N. E. 265; Owen v. Ogilvie, 32 App. Div. 465, 53 N. Y. S. 1033; Woodman v. Kidd, 25 App. Div. 254, 49 N. Y. S. 301. Neither is the case strengthened by the fact of the knowledge of the letter by Mr. Cashen, at another point without the state, who came to Birmingham and there discussed the letter with plaintiff, or with others, if he did so. It was not disclosed by the evidence how or from whom Cashen got or saw the Smith letter. Under the principle of the case of Age-Herald Co. v. Huddleston, supra, the publication, if such there was in Atlanta, Ga., Cleveland, Ohio, or Springfield, Mo., of the Smith letter, if read and published by Lee, was not within the county of Jefferson in this state, where the suit was brought. It results that on this phase of the case the defendants were entitled to the general affirmative charge, since the law of this jurisdiction requires proof of publication by the defendants, in Alabama.

It is necessary to consider the action of the court in sustaining demurrers to several counts of the complaint, originally filed in the failure to specifically state the *place* of the alleged false and malicious "publication of and concerning the plaintiff in writing," and in failure to declare the *time* of that publication. The sufficiency of the

counts is challenged, among others, by said appropriate grounds of demurrer. And the character or nature of the publication was not sufficiently disclosed by the original complaint that did not disclose that it was by the letter made the subject of the evidence.

The subject of the averment of the *place where* in a complaint was recently discussed by Mr. Justice Foster in Phillips v. Ashworth (Ala. Sup.) 124 So. 519,[1] a case for seduction, and it was declared that the place of accomplishment need not be stated. This was on the authority of Moore v. Bradford, 3 Ala. 550, in which is the declaration that the court presumes that a bill of exchange was drawn at the place stated as the venue of the declaration, therefore the *place where* in such an action "cannot well become a question on demurrer."

The form prescribed in the Code, § 9531, No. 17, is that as was prescribed before the case of Age-Herald Pub. Co. v. Huddleston, 207 Ala. 40, 92 So. 193, 37 A. L. R. 898. In the present form are the words "Newspaper published at ——, called —— (or book, or writing, as the case may be), * * * on the —— day of ——." It will be borne in mind that the decision of Age-Herald Pub. Co. v. Huddleston, supra, was a review of the action in sustaining demurrers to defendant's pleas in abatement to the jurisdiction, and that newspapers were said to be not within that general rule of liability of libel uttered through letters. It is that the libelous matter through the mails is the uttering or publication of the same at two points—that of its dictation, if so it was written, read, and understood, and at the place of its receipt by addressee. Kenney v. Gurley, 208 Ala. 623, 95 So. 34, 26 A. L. R. 813.

■ It was not essential to plaintiff's right of maintenance of the action that there should have been a publication of the libel in the state of Alabama. Code, § 5681; Steven's Trust v. Hopson, 215 Ala. 261, 263, 110 So. 147; The Copperfield (D. C.) 7 F. (2d) 499, 500; 8 Enc. of Ev. 192, § 3 (note 17); Newell on Slander & Libel, p. 219 (note 4); Townsend on Slander (4th Ed.) p. 90, § 110; p. 572, § 326, notes 1, 2; 36 C. J. p. 1227, § 18; p. 1229, § 187; Burbank v. Horn, 39 Me. (4 Heath) 233; Jefferies v. Duncombe, 11 East, 226; Lister v. Wright, 2 Hill (N. Y.) 320; Hull v. Vreeland, 42 Barb. (N. Y.) 543; Offutt v. Earlywine, 4 Blackf. (Ind.) 460, 463, 32 Am. Dec. 40; Stout v. Wood, 1 Blackf. (Ind.) 71; Commonwealth v. Blanding, 3 Pick. (Mass.) 304, 15 Am. Dec. 214; Langdon v. Young, 4 Shaw. 136. The English cases are to the like effect as to sending letters. Rex v. Johnson, 7 East, 65; Rex v. Watson, 1 Camp, 216; Rex v. Girdwood, Vol. 2·East, P. C. 1116, 1120. And the cases make

---

[1] 220 Ala. 237.

a distinction as to venue between civil and criminal cases.

■ While it is generally held not necessary to allege venue in a complaint, that being a matter of defensive pleading in abatement (Snyder Cigar & Tob. Co. v. Stutts, 214 Ala. 132, 107 So. 73; Tenn. Coal, Iron & R. R. Co. v. Bridges, 144 Ala. 229, 39 So. 902, 113 Am. St. Rep. 35), it is required that such pleading sufficiently declare the nature of the actionable tort as to time and place, so as to enable a defendant to properly defend the suit that is brought. L. & N. R. Co. v. Whitley, 213 Ala. 525, 105 So. 661; Bugg v. Green, 215 Ala. 343, 110 So. 718. And the "publication" "in writing" being averred in general terms, not showing how the publication was made, nor its time and place, is insufficient to inform defendant in respects indicated and as is necessary to a defense. The authorities have not regarded the *place where* as a material fact, when the defendant was sufficiently informed of the publication alleged to have caused the damage. This becomes so by reason of the general terms of the averment employed by the pleader as to the nature and extent of the publication made the subject of complaint; and by the fact that if publication is by newspaper it was as of the point of issue, and if by letter, may be at initial and receiving points; and by the fact that, if in other states the law of that jurisdiction and that of proof may be different. It follows that defendants were not sufficiently informed by the original complaint so that they may defend as to what libel was declared upon.

■ Mr. Newell states generally that the time of speaking the words is not material, otherwise than to show that it was prior to the commencement of the action. Newell on Slander & Libel, p. 558, § 327; p. 90, § 110; p. 658, § 396; and this text is on the authority of Potter v. Duncombe, 11 East, 87; Hosley v. Brooks, 20 Ill. 115, 71 Am. Dec. 252; Norris v. Elliott, 39 Cal. 72; Hallowell v. Guntle, 82 Ind. 554. See Cole v. Babcock, 78 Me. 41, 2 A. 545. It is necessary that it be shown, by averments employed, that the libel declared upon was prior to the commencement of the action. And it is held in this jurisdiction that where the complaint alleges that the slander was by words spoken in 1871, this averment was the equivalent of the allegation of a publication prior to the commencement of the action. Sonneborn v. Bernstein, 49 Ala. 168; 25 Cyc. 489.

In a later case, Ebersole v. Fields, 181 Ala. 421, 423, 62 So. 73, 74, it is declared: "Referring to our early case of Hill v. Ward, 13 Ala. 310, it was said in Griffin v. Isbell, 17 Ala. 186: 'The action of slander, in all its varieties, is one of peculiar strictness in respect of the pleadings and the evidence.

There is, perhaps, no other civil action which has been treated so strictly by the courts.' "

See, also, Dent v. Balch, 213 Ala. 311, 104 So. 651; Phillips v. Ashworth, 220 Ala. 237, 124 So. 519.

Mr. Newell on Slander & Libel, pp. 727, 728, § 718, further dealing with the necessity of good pleadings in earlier cases of libel and slander, declared that "from an examination of the earlier cases for libel and slander in the state of New York that the contest was, almost without an exception, a contest of pleaders"; that under reformed procedures by statute it was provided "that the first pleading on the part of the plaintiff should be 'the complaint,' and should contain—'1. The title of the cause, specifying the name of the court in which the action is brought, the name of the county in which the plaintiff desires the trial to be had, and the names of the parties to the action, plaintiff and defendant. (2) A plain and concise statement of the facts constituting a cause of action, without unnecessary repetition. (3) A demand of the relief to which the plaintiff supposes himself entitled. If the recovery of money be demanded, the amount thereof shall be stated.' "

We may say further that the *place where* of publication in such a case by letter becomes material in the fact that the proof, and the source of proof, as to publication is different in one state or in another, dependent upon what set of facts the plaintiff proceeds on; thus the *place where* becomes a material allegation in the instant case.

The specific ground of demurrer, that the date of said alleged publication is not made to appear, was well taken to counts as originally filed; and so of the necessity of the nature of the publication and that it was before the suit. There was no error in sustaining demurrers to the original counts, and hence no error in driving the plaintiff to amendment of the complaint. Section 9531, Code, Form Nos. 16 and 17; Age-Herald Publishing Co. v. Huddleston, 207 Ala. 40, 92 So. 193, 37 A. L. R. 898; Phillips v. Ashworth, 220 Ala. 237, 124 So. 519; Shadix v. Brown, 216 Ala. 516, 113 So. 581.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and FOSTER, JJ., concur.

## On Rehearing.

THOMAS, J.

This case has been considered on rehearing by the whole court with the Richardson Case, ante, p. 449, 129 So. 574, and the rehearing is denied.

All the Justices agree, except BROWN, J., not sitting.