Judge Robertsoh
delivered the opinion of the Court.
This was an action on the case, for a libel alleged to have been published by the defendants against the plaintiff, as a circuit judge.
We shall deem it necessary (o consider only two questions; they will comprehend all others.
1st. Did the court err in suffering the defendants to withdraw pleas which they had filed, and to file others?
2d., Was any of the testimony, admitted for the defendants, illegal and inadmissible?
At the July term, 1826, the defendants filed two pleas, not guilty and justification.
At the October term succeeding, the plea of justification was withdrawn by all the defendants except Mason and Jameson.
At the April term, 1827, the court permitted the 'defendants “to withdraw their pleas,” without any other reason assigned, than that they were defective; and afterwards, during the same term, they filed ft plea of justification alone.
That the circuit courts have an extensive discretion in their superintendance over the pleadings, must be conceded. It may. also be admitted that this court will seldom control the exercise of that discretion. But like every thing else judicial, it has limits, within which it must be circumscribed. It is a legal discretion. It may be abused; when it shall be, this court must interpose. We think that it has been improvidently exercised in this case. The issue was complete on the plea of not guilty. The plea itself, made the issue; a siryiiliter was not essentially necessary. There was an affirmation on one side, anda negation on the other.
After the. pleas had been filed, and one issue virtually made up, the court ought not, at a subsequent term, to have permitted a withdrawal of them, with» *541 •*ut good cause. No such cause was assigned. The plea of justification was defective; no issue had been taken upon it; and, therefore, the circuit court have permitted the withdrawal of that. But the plea of not guilty, was certainly not deficient in form or in substance. No sufficient reason is assigned for withdrawing it. There could have been no motive for the motion for leave to withdraw it, but a wish to obtain the right of opening and concluding the cause, which had been conceded to the plaintiff by the pleadings ns they stood. Such a movement wns well calculated to surprise the plaintiff. He had prepared for trial on the issue of not guilty. He had been required to prove the libel. He had, (as may be supposed) summoned witnesses to prove it. It was not just, therefore, for this reason alone, to permit the withdrawal of not guilty, unless some cause had been shown for it, much better than that which was assigned'. The rights of the parties are equal. Neither should be permitted to take any undue advantage of the other. After the plaintiff had become entitled to the right of opening and concluding-the cause, the defendants ought not to have been allowed to deprive him of it, without his consent, or without showing a good cause for it. it is not shown or even pretended that the withdrawal of the plea of not guilty, would be conducive of justice or a fair trial. And, therefore the court erred in permitting the defendants to withdraw the plea of not guilty. The case of Rochester vs. Dun, I. Bibb, 412, is directly in-point; and no statute passed since that decision, for the regulation of pleadings, can, in the slightest degree, affect the reasoning employed in it by the court, nor the decisive application of it, to this case.
Oppmibioua epi(t£tt61,ar^ ”° e ou,‘
To publish of tkat paoityas°a~ judge,or that, “he has ihe^ommon principles of truth,” are TtMjublish of v judge, office of clerk, in such manner as to cancel private debts,” is actionable only imporls an imputation of 0ffiTel>ti°nm ° ce’
*541 The court also admitted illegal testimony. This is the second and more important branch of the case.
The publication, charged to be libellous, contains many opprobious epithets; but these are not libel-loas; III. Starkie on slander, 100-11; lb. 340-1-2. Only three specific charges against the plaintiff, for which he could maintain an action, can be deduced from the libel. 1st. That he lacked capacity as a judge. 2d. That he had abandoned the common *542 principles of truth: and, 3d. That he bad made the °®ce °f clerk a subject of private negotiation be-, men, to whom he was under personal obligations, and endeavored to cancel those debts by a barter of office. This last charge is actionable so far and so far only, as it imports the imputation qf corruption in office. Anything which assails the integrity or capacity of a judge, is actionable. Sea the authorities, supra.
Any thing which assails integrity or capacity of a judge, is actionable.
To charge judge of improprieties, which would be no cause of impeachment or address, is no more actionable, than if made against private citizen.
Opinions of persons, who are not witnesses,in inadmissible evidence, to prove incapacity in judge.
^ ^ cou^ be proved that the judge sold his patronage, or derived any pecuniary advantage from its bestowment, in the selection of his clerks, this charge would be justified. But as it is a charge of sale and corruption, nothing but proof of such ¡.ale and corruption can justify it. To charge a judge improprieties, which would not be cause of im-peacbmenl or address, would be no more actionable than would be the same charge, made against a pri-va*-e Citizen. This is the law even of England. It must be so in this land of republican equality.
in support of each of the throe charges, evidence was admitted by the court, which was clearly irrelevant and illegal. To prove incapacity, the defendants were permitted to ask witnesses the opinions of persons who were not witnesses. They were permitted to prove the opinion, at or about the time of the libellous publication, of the Montgomery bar. This was surely illegitimate. The capacity of the judge must be ascertained by the opinions of intelligent witnesses. It is not allowable to prove the opinions of men who are not sworn, or even public opinion. Such evidence as that admitted on this point, is not even as good as rumor. Who can swear what another’s opinion is, on any subject? No prudent man will venture to do it. And if a witness should make the adventure, what is his evidence more than that he heard the individual express an opinion? Does.be know that he was honest, candid and disinterested, in that opinion? Does he know that he would have sealed it by a judicial oath? Does he know that he was not provoked by passion, or influenced by malice or prejudice? And can the jury know whether he was a competent judge of the intellectual capacity *543 or legal attainments of judges? Every opinion must be given on oath. No man’s reputation would be safe, if such evidence were tolerated as that to we have alluded.
Record of deFs,lon 01. adnii-isibleev-idence to Prove ]*13 in_ oapacl ?•
Nor was the record of a decision by judge Robbins legal evidence. If one decision be admissible, every other must be equally so; and, consequently, the farce might have been exhibited of subjecting to the scrutiny and revision of the jury, for approval or reversal, every judicial opinion which judge Robbins ever gave. If the defendants have the right to read as evidence, the record of an opinion, which -they -suppose will tend to prove incapacity or imbecility, the judge would certainly have the reciprocal right of reading such as he might suppose evidences of his fitness and learning.
But shall a jury gravely pass judgment on the correctness or incorrectness of the decisions of a judge? If they may, the order of thiugs must be diverted, and no judge will be able to stand. For there never lived, nor will there ever live, one who could pass, unhurt, such an ordeal.
The mode, and only one, of trying the capacities of judges, is to ascertain the opinions, on oath, of honest and intelligent witnesses..
The excitement in Montgomery, at the time a clerk was appointed, or at any other time, was entirely irrelevant to the issue. Deplorable would be the condition of every citizen, if the security of his rights depended on popular passion oí-impulse alone. If he be persecuted, is the fact that he is the victim of denunciation, evidence that he deserves to be? If lawless men should raise a mob, to drive him from his purpose or punish him fora supposed offence, is their commotion, proof of his demerit or guilt? But more deplorable still, would be the condition of the judiciary, if tumultuary scenes, produced and excited for the avowed purpose of overawing a judge, should be tolerated as evidence of the judge’s incapacity oil-corruption. The fact that some of the people of Montgomery were excited, proves only that' they' were excited. It might prove a!soá that their conduct *544 was unworthy of them, as intelligent men and peaceable citizens. But how it could prove that judge Robbins was incapable or corrupt, we cannot imagine. He may have been imprudent. He may have erred. On this subject we cannot adjudicate. But if he erred, it must be proved by other evidence than the clamour excited against him in Montgomery or elsewhere. It is to escape the consequences of this outcry, that he has appealed to the laws of his country.
ia this country, nothing is libellous against judge, which would not be so against privite citizen, unless it tend to his removal from office.
If judge Robbins recommended or connived, at any petty negotiation or barter between candidates for clerkships, he deserves reprehension. Such conduct cannot be approved. It would be an indiscretion which nothing could justify, and one which would be well calculated to bring the judiciary into suspicion and consequent discredit. While itis necessary to the proper administration of the laws, that the judges should be pure and independent, it is equally necessary that they should be prudent, and habitually attentive to the proprieties of their stations. The plaintiff as well as the defendants, may desire a judicial investigation of this matter, but it cannot be indulged under any legal issue.
Proof that judge Robbins had been guilty of such an indiscretion, could not justify the charge of his bartering.in offices, nor of his cancelling any of his obligations by the appointment of clerks. Sale of his patronage, a prostitution of his office to mercenary purposes, is the gravamen of the libel; and it is to this that the plea and the proof should be restricted. Nothing which does not impeach his integrity, is pleadable orproveable, in justification of this charge. There is a difference between the malignity and inju-riousness of words spoken or written. And, therefore, words may be libellous which would not be slanderous. II. Wheaton’s Selwyn, 795. Any malicious publication in writing, which tends to render a man or a magistrate ridiculous, or to exclude hirn from society, or remove him from office is a libel.
But in this country, nothing is libellous against a judge, which would not be so against a private citizen, unless it tend to his removal from office.
iei/'wTth^ri-penly aban-doningthe cidespnn" truth,” isli-bellons. with^ ¡n judgment or **seiit? ment°jsnot libellous,
j'o charge a.judge or a citizen with “openly abandoning the common principles of truth,” is libellous. But to charge either with erring in judgment, or disregarding public sentiment, is not libellous. And therefore, most of the reproachful phrases and words in the publication, for which this suit was brought, are not imb’raced in the issue, and consequently no testimony in relation to any such irrelevant matter, should be indulged on either side. Whether the people or the judge erred, or erred most in the scenes of violence Which occurred, about the time Stone-street was appointed clerk, is not a fit subject of •quiry in this suit. Nor is it proper to investigate the question, whether the judge ought to have appointed another person clerk, or should have sacrificed his own opinion of his duty, to the wishes of those, who may have instructed and attempted to control him.
The proper inquiry is: 1st. Was the.judge, at the date of the libel, destitute of the capacity and atfidn-ments necessary for his station? 2d. Did he openly abandon the common principles of truth? And, 3d. Did he sell, directly or indirectly, the appointment of clerk? Any evidence which will prove or legally conduce to prove either of these charges, would be admis-. sible. No other would be.. And they all must be proved before the libel can be justified.
Pleadings will lose their object, if the evidence be not circumscribed by the issues which they conclude. The issue in this case, was of the threefold character, which has been explained. For, whatever else the libel or the plea may contain, the whole mass, results in these three points, when analysed'and subjected to the test of the law.
The court did not err in rejecting tire evidence offered by judge Robbins, which was intended to show that he was a good judge at the lime o£-lhe trial, or that the people of Montgomery, or the bar in that county, had changed their opinion-. This matter would be as impertinent to the issue, as any of that of which we have spoken. But if the latter were admissible, surely the former would be equally so.
The proper inquiry.as to capacity, is not what was the opinion of the witness at the date of the libel: *546 but what is his opinion now of the judge’s qualifications then? And it should be, what does he think, not what do others think, or what did they think?
■Mills and Brown, for plaintiff; Monroe, Hoggin and ‘l)epewrlor defendants. -
•The cause has been conducted, throughout, in an irregular manner. When it shall return to the circuit court, it should be kept strictly within the issue-No plea of justification will be good, unless it justify the three libellous charges which have been designated; want of capacity; an open abandonment of the common principles of-'truth; and a sale, direct or indirect, by the judge, of the appointment of clerk. •The special plea which was filed, is not sufficient.
Judgment reversed,and the cause remanded fora' new trial, to commence from the plea of not guilty, ■and lo be conducted conformably to this opinion.
The plaintiff in error must recover his costs.