Kent Andrew **FOLLETTE** and Jane Elizabeth Follette, Individually and as Next Friend of Andrew Stephenson Follette, a minor child

v.

**CLAIROL, INC.** and **Wal–Mart Stores, Inc.,** d/b/a Sam's Wholesale Club and/or Sam's Wholesale Club, a Division of Wal–Mart Stores, Inc.

Civ. A. No. 92–0754–M.

United States District Court, W.D. Louisiana, Monroe Division.

March 15, 1993.

Charles E. Perry, James A. Rasmussen, Bob Balch, Kenneth Johnson, Johnson & Assoc., Wichita Falls, TX, for plaintiffs.

Jane P. Brandt, Frank Finn, Joseph Pevsner, Hal Ray, Greg W. Curry, Thompson & Knight, Dallas, TX, for Clairol Inc.

Gregory Grajczyk, Edward L. Merritt, Harbour Kenley Boyland Smith & Harris, Longview, TX, for Wal–Mart Stores Inc. d/b/a Sam's Wholesale Club, Sam's Wholesale Club, A division of Wal–Mart Stores Inc.

## JUDGMENT

TRIMBLE, District Judge.

For the reasons stated in the Report and Recommendation of the Magistrate Judge previously filed herein and after an independent review of the record including the objections filed therein, and a *de novo* determination of the issues, and having determined that the findings are correct under the applicable law; it is

ORDERED that the Motions for Summary Judgment of Clairol, Inc. and Wal–Mart Stores, Inc. d/b/a Sam's Wholesale Club be and they are hereby GRANTED dismissing plaintiffs' claims against defendants with prejudice.

## *REPORT AND RECOMMENDATION*

WILSON, United States Magistrate Judge.

Presently before the court are motions for summary judgment filed by Clairol, Inc. (Clairol) and Wal–Mart Stores, Inc. d/b/a Sam's Wholesale Club (Wal–Mart). They have been referred to the undersigned Magistrate Judge for a report and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

This is a products liability action arising out of an accident occurring on August 21, 1989 in Louisiana. The product was purchased in Louisiana. It was not manufactured in Texas. The plaintiffs are residents of Louisiana. The claim has absolutely no relationship or connection with the State of Texas except for the fact that, on August 12, 1991, plaintiffs filed suit in the United States District Court for the Eastern District of Texas.

The obvious purpose for filing the suit in Texas was to secure the benefit of Texas' two year prescriptive period. Had plaintiffs filed this suit in Louisiana their claims against both Clairol and Wal–Mart would have been prescribed. However, under Texas' choice of law rules, the Texas court would be required to apply Texas' two year statute of limitations. Texas Civil Practice and Remedies Code § 71.031; *Culpepper v. Daniel Industries, Inc.*, 500 S.W.2d 958, 958–959, (Tex.Civ. App. Houston [1st Dist.] 1973); *writ. refused NRE* (Jan. 23, 1974).

Both Wal–Mart and Clairol filed motions to dismiss or, in the alternative, transfer the case, contending that the Texas court had neither *in personam* jurisdiction over the defendants nor any interest in the claims. The United States District Judge for the Eastern District of Texas denied the motions to dismiss or transfer for lack of personal jurisdiction. The denial was based upon the court's conclusion that both Wal–Mart and Clairol had consented to be subject to the general personal jurisdiction of the Texas courts by applying for and being issued a certificate of authority to do business. The court, nevertheless, transferred the case to the Western District of Louisiana pursuant to 28 U.S.C. § 1404(a) "in the interest of justice" and "for the convenience of parties and witnesses." (*See* 4/23/92 Order of Judge Sam B. Hall, Jr.)

Both Clairol and Wal–Mart now contend that the claims against them have prescribed. The prescription issue turns on whether Louisiana's one year statute of limitations (LSA–C.C. art. 3492) or Texas' two year statute of limitations (Art. 5526 Vernon's Ann. Civil Statutes) applies. The question of which prescriptive period applies, in turn, depends upon whether a Texas court could constitutionally exercise *in personam* jurisdiction over each of the defendants.

■ If Texas could constitutionally exercise *in personam* jurisdiction over the defendants this court is required to apply the Texas statute of limitations. *See Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990). On the other hand, if the defendants were not subject to the *in personam* jurisdiction of the Texas court

then the Louisiana statute of limitations applies. *McTyre v. Broward General Medical Center,* 749 F.Supp. 102 (D.N.J.1990). Thus, we reach the issue of *in personam* jurisdiction in an effort to decide whether the plaintiffs' claims have prescribed.

■ Plaintiffs contend that the jurisdictional issue has been decided and is now the law of this case. *See Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 814–16, 108 S.Ct. 2166, 2177–78, 100 L.Ed.2d 811 (1988). Defendants argue that previous findings relative to jurisdiction were mere dicta that this court is free to disregard. The previous ruling on personal jurisdiction cannot be merely dismissed as dicta. The Judge denied the motions to dismiss or transfer for lack of jurisdiction. His ruling leaves no room to doubt that the reason for doing so was his conclusion that the Texas courts could exert general *in personam* jurisdiction over the defendants. Nevertheless, this court concludes that it is appropriate for it to re-examine the jurisdictional issue.

■ Generally, "when a court decides upon a rule of law that decision should continue to govern the same issues in subsequent stages of the same case." *Christianson, supra* at 814, 108 S.Ct. at 2177. This principle applies equally to the court's own decisions and to the decisions of a coordinate court. *Id.* It is especially applicable to a transfer decision because of the threat of sending the "litigants into a vicious cycle of litigation." *Id.* at 816, 108 S.Ct. at 2178.[1] However, a court has the power to revisit prior decisions although it "should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Id.* (*quoting Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1982)).

The Judge's finding that the Texas court had personal jurisdiction over the defendants was based solely upon his conclusion that the defendants were deemed to have consented to be subject to the general personal jurisdic-

tion of the Texas courts by virtue of their having complied with the requirements of the State of Texas for obtaining authority to do business in that state. Subsequent to the ruling, the United States Fifth Circuit Court of Appeal handed down its decision in *Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179 (5th Cir.1992). The court specifically held that qualifying to do business in Texas was insufficient to subject the defendant to the general *in personam* jurisdiction of the Texas courts. "[A] foreign corporation that properly complies with the Texas Registration statute only consents to personal jurisdiction where such jurisdiction is constitutionally permissible." *Id.* at 183.

*Siemer* directly conflicts with the basis for the prior decision in this case regarding the issue of personal jurisdiction. This is the type of extraordinary circumstance that justifies revisiting the issue of personal jurisdiction.

■ The plaintiffs argue that Texas state law controls the issue of jurisdiction before the court. They cite decisions supporting their claim that Texas courts have held that a corporation, by qualifying to do business in Texas and appointing an agent for service of process in Texas, consents to being subject to the jurisdiction of the Texas courts for all claims regardless of the relationship between the forum and the litigation. *See Goldman v. Pre–Fab Transit Co.,* 520 S.W.2d 597, 598 (Tex.Civ.App.—Houston [14th Dist.] 1975); *Acacia Pipeline Corp. v. Champlin Exploration, Inc.,* 769 S.W.2d 719 (Tex.Civ.App.—Houston [1st Dist.] 1989); *Prejean v. Sonatrach, Inc.,* 652 F.2d 1260, 1270 n. 21 (5th Cir.1981). This position has no merit. State law controls only if the exercise of personal jurisdiction is consistent with the limits imposed by the Due Process Clause of the Fourteenth Amendment. *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *Smith v. DeWalt Products Corp.,* 743 F.2d 277, 278 (5th Cir.1984). The decision in *Siemer* was

1. Contrary to the plaintiffs' contention, it is not the transfer decision that this court is being ask to reconsider. Regardless of this court's holding

the case is not going to be retransferred back to Texas.

clearly based upon the limits imposed by the due process clause.[2]

∎ The due process clause of the Fourteenth Amendment places limits on the State's exercise of its judicial power over foreign corporations. *International Shoe Co. v. Washington,* 326 U.S. 310, 315, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). It requires, as a predicate to the exercise of personal jurisdiction, that the foreign corporation have contacts with the foreign state that "make it reasonable in the context of our federal system of government to require the corporation to defend the particular suit which is brought there." *Id.* The result is a test that is neither mechanical nor qualitative. *Id.* at 317, 66 S.Ct. at 159. "[T]he relationship among the defendant, the forum, and the litigation … [is] the central concern of the inquiry into personal jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977).

∎ When, as here, the litigation has no relationship whatsoever to the corporation's purposeful contacts with the forum state the focus narrows to the relationship between the defendant and the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. at 413, 104 S.Ct. at 1872. Personal jurisdiction under these circumstances has been categorized and labeled as general personal jurisdiction.[3] *Id.; Siemer v. Learjet Acquisition Corp., supra; Bearry v. Beech Aircraft Corp.,* 818 F.2d 370 (5th Cir.1987).

The U.S. Supreme Court has provided little specific guidance as to the precise limits on the exercise of general personal jurisdiction. In the more than 40 years since its decision in *International Shoe Co. v. Washington,* the Court has decided only two cases specifically addressing general personal jurisdiction.

*Perkins v. Benguet Consolidated Mining Co., supra,* 342 U.S. at 437, 72 S.Ct. at 413 is the only case since *International Shoe* where the Supreme Court found that general personal jurisdiction was permissibly exercised by a state court. The defendant's mining operations in the Philippine Islands were completely stopped during the Japanese occupation. The president-general manager-principal stockholder of the defendant corporation returned to his home in Ohio. While in Ohio he carried on "continuous and systematic supervision of the necessarily limited war time activities of the company." *Perkins,* 342 U.S. at 446, 72 S.Ct. at 419. The corporation's records were kept in Ohio. The directors' meetings were held in Ohio. Corporate bank accounts were located in Ohio and all key business decisions were made there. In short, Ohio was the "principal, if temporary, place of business" for the corporation. (*quoting Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 779, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984)). Noting that the "essence of the issue" was of "general fairness to the corporation" the Court focused its inquiry on whether the nature and amount of the defendant's activities in Ohio made it "reasonable and just to subject the corporation to the jurisdiction" of the Ohio courts. *Perkins,* 342 U.S. at 444, 72 S.Ct. at 418. After defining the issue in these terms the Court simply concluded that, under these circumstances, an exercise of general personal jurisdiction was not prohibited by the due process clause.

---

**2.** The interpretation plaintiffs suggest raises both due process and commerce clause concerns. *See Lewis, Jurisdiction Over Foreign Corporations Based on Registration and Appointment of an Agent: An Unconstitutional Condition Perpetuated,* 15 Del.J.Corp. L.1 (1990); *Kipp, Inferring Express Consent: The Paradox of Permitting Registration Statutes to Confer General Jurisdiction,* 9 Rev.Litig. 1 (1990).

**3.** "It has been said that when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's con-

tacts with the forum, the State is exercising 'specific jurisdiction' over the defendant." (citation omitted) *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413 n. 8, 104 S.Ct. 1868, 1872 n. 8.

"When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant." (citations omitted) *Id.* at n. 9.

The Court considered the issue of general personal jurisdiction for the second and last time in *Helicopteros Nacionales de Colombia, S.A. v. Hall, supra.* The question before the Court was whether a foreign corporation could be sued in a Texas court on claims arising out of a helicopter crash in Peru. The parties made no argument that the claim had any relationship to the defendants' contact with the State of Texas. 466 U.S. at 413 at n. 10, 104 S.Ct. at 1872 at n. 10. The Court examined the defendant's contacts with the State of Texas in order to determine whether they constituted "the kind of continuous and systematic general business contacts the Court found to exist in *Perkins*" and then held that they did not. 466 U.S. at 413–16, 104 S.Ct. at 1872–73. The Court summarized the defendant's contacts with the State of Texas as follows:

> "It is undisputed that Helicol does not have a place of business in Texas and has never been licensed to do business in the state. Basically, Helicol's contacts with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account drawn on a Houston bank; purchasing helicopters, equipment and training services from Bell Helicopter for substantial sums; and sending personnel to Bell's facilities in Fort Worth for training." 466 U.S. at 416, 104 S.Ct. at 1873.

■ These two decisions do little more than establish that an exercise of general personal jurisdiction is permissible in a corporation's principal place of business and is not permissible when the corporation's contacts with the forum state are no greater than those found in *Helicopteros Nacionales de Colombia, S.A. v. Hall.* The facts of the present case place it in the broad gray area that lays in between.

■ The analysis under the due process clause has been further refined into two steps. *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359 (5th Cir.1990); *Bearry v. Beech Aircraft Corp., supra.* The first step involves an inquiry into whether there are "certain minimum contacts" with the forum state. *Id.* Compared to specific personal jurisdiction, contacts more extensive in nature and quality are required for general personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall, supra; Dalton v. R & W Marine, Inc., supra; Bearry v. Beech Aircraft Corp., supra.* Where, as here, the cause of action does not arise out of defendant corporation's purposeful contacts with the forum state there must be "continuous and systematic contacts" between the state and the foreign corporation to clear this first hurdle. *Id.*

■ If the plaintiff establishes the required minimum contacts the court's focus shifts to whether the exercise of general personal jurisdiction is fair and reasonable under the circumstances. *ASAHI Metal Ind. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Dalton v. R & W Marine, Inc., supra; Bearry v. Beech Aircraft Corp., supra.* This inquiry requires that the court consider: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiffs' interest in obtaining relief, (4) the judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the several states in furthering fundamental substantive social policies. *ASAHI Metal Ind. v. Superior Court, supra* 480 U.S. at 113, 107 S.Ct. at 1033; *Dalton v. R & W Marine, Inc., supra* 897 F.2d at 1363.

■ Both Clairol and Wal–Mart have substantial and continuous contacts with Texas. They are both authorized to do business in Texas. As required by law, they have appointed agents for service of process in Texas. Wal–Mart's additional contacts with Texas include:

1. Operation of approximately 264 large scale retail outlets in Texas;

2. Deriving substantial income from the sale of goods in Texas;

3. Ownership of real and personal property located in Texas;

4. Ownership of a Texas corporation;

5. Employment of a substantial number of Texas residents.

(*See* Plaintiffs' Response and Brief in Opposition to Defendant Wal–Mart's Motion to Dismiss or Transfer)

Clairol's contacts with Texas include:

1. Location of a business office in Texas;
2. The location of division regional offices in Texas;
3. Ownership of personal property located in Texas;
4. Payment of Texas property taxes;
5. Deriving substantial revenue from the sale and marketing of its products in Texas;
6. Payment of Texas franchise taxes.

(*See* Plaintiffs' Memorandum in Rebuttal to Clairol's Reply Brief p. 3, record item # 25)

▮ The court finds that plaintiffs have established that there is at least a genuine issue as to whether defendants have the necessary minimum contacts with the State of Texas. *See Rittenhouse v. Mabry*, 832 F.2d 1380, 1390 (5th Cir.1987). This requires the court to address the issue of whether the exercise of general jurisdiction is fair and reasonable under the circumstances of this case.

There are persuasive arguments that the states with power to exercise general personal jurisdiction over a corporation should be limited to the state of incorporation and the state where the corporation's principal place of business is located. *See Twitchell, The Myth of General Jurisdiction*, 101 Harv. L.Rev. 610 (1988), (hereafter referred to as *"Twitchell, The Myth"*); *von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv.L.Rev. 1121 (1966).[4] This court agrees that this is the "fair" and "reasonable" place to draw the line on permissible exercise of general personal

jurisdiction under the circumstances presented in *this case*.

Such a limit strikes the proper balance between the interests of the defendants and the interests of the plaintiffs and the states. It "raises few of the risks associated with broader general jurisdiction, yet insures plaintiffs of a place to sue, provides predictability for defendants, and comports with international jurisdiction standards. This approach also increases the possibility that the plaintiff will find a forum where it can sue multiple defendants. . . . The exercise of dispute blind jurisdiction at the defendant's home-base comports with the historical meaning of general jurisdiction. . . ." *Twitchell, The Myth*, at fn. 269.

Where defendant is called upon to defend the litigation in a forum having no relationship to the controversy there is a real burden on the defendant. *Bearry v. Beech Aircraft Corp., supra* 818 F.2d at 377. This fact was recognized by the U.S. District Court for the Eastern District of Texas in the present case when it ordered this case transferred to the Western District of Louisiana.[5] The fact that the litigation has no relationship to the forum state means that the defendant will be called upon to defend itself where no witnesses may be compelled to testify except by deposition taken outside the forum. The defendant will likely have to bear the travel expenses of those witnesses who can be convinced to voluntarily appear at the trial. Further, the forum state's court will have to adjudicate the defendant's rights by applying and interrupting the laws of another state. It is clear that the courts of the state whose substantive law will apply are best suited for this task.

The forum state's interest is tenuous at best. The plaintiff is not a resident. None of the significant events occurred there. The forum state's lack of interest is reflected in

---

4. There have been a number of other suggestions as to different criteria for determining when general personal jurisdiction is permissible. *See* for example *George, In Search of General Jurisdiction*, 64 Tul.L.Rev. 1097 (1990); *Brilmayer, et al. A General Look at General Jurisdiction*, 66 Tex. L.Rev. 721 (1988).

5. While the transfer pursuant to 28 U.S.C. § 1404 reduces the burden to a great extent it

does so by requiring the case be tried in Louisiana. It is difficult to understand how this can lend much weight to the position that it is fair and reasonable for Texas courts to exercise personal jurisdiction in this case. (*but see Burnham v. Superior Court of California*, 495 U.S. 604, 638 at n. 13, 110 S.Ct. 2105, 2125 at n. 13, 109 L.Ed.2d 631 (1990) (Brennan, J., concurring opinion)).

the fact that if it heard the case it could not apply its own substantive law to the extent that it materially conflicted with Louisiana law. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). The forum state may have some general interest in the defendant's affairs because it is, to some extent, a participant in the state's economy and, possibly, the state's political process. But this interest is so slight and so inferior to the interests of other states that it lends little support to an argument that the exercise of general personal jurisdiction is fair and reasonable.

Plaintiffs' interest in obtaining fair and effective relief is served by the availability of forums in states with specific personal jurisdiction (especially Louisiana) and in the state or states where the corporations are incorporated and where their principal place of business is located.

The consideration of the judicial system's interest in obtaining effective resolution of controversies would weigh in favor of limiting general personal jurisdiction as suggested. Significantly, this is not a case where exertion of personal jurisdiction by a Texas court is necessary to allow plaintiff to conveniently join all parties in one suit.

Further, in this case, this court is unable to discern any fundamental social policy that would be significantly furthered by allowing Texas, a state with no interest in the controversy, to adjudicate it. These considerations have led this court to conclude that Texas could not, consistent with the due process clause of the Fourteenth Amendment, exercise general personal jurisdiction over the defendants in this case.

*Cowan v. Ford Motor Co.,* 694 F.2d 104 (5th Cir.1982) reached a different result on substantially identical facts. However, for the reasons that follow, it does not control the decision in this case. Most importantly, *Cowan* was decided prior to *Helicopteros Nacionales de Colombia, S.A. v. Hall, supra.* Therefore, it failed to recognize the distinction between specific personal jurisdiction and general personal jurisdiction. More specifically the court in *Cowan* failed to recognize that general personal jurisdiction requires "the kind of continuous and systematic general business contacts the court found to exist in *Perkins.*" 466 U.S. at 416, 104 S.Ct. at 1873. As previously noted, the exercise of general personal jurisdiction requires contacts that are more extensive in nature and quality than those required for the exercise of specific personal jurisdiction. The court in *Cowan* concluded that "sufficient contacts indisputably are present" by relying on cases involving the exercise of specific personal jurisdiction. 694 F.2d at 107 n. 8. This, together with subsequent Supreme Court cases refining the analysis of the limits on the exercise of personal jurisdiction, leads this court to conclude that the decision in *Cowan* does not control the issue of personal jurisdiction before the court.[6]

This court concludes that the Texas courts could not constitutionally exercise personal jurisdiction over the defendants in this mat-

---

**6.** Frankly, *Cowan* cannot be easily reconciled with the decision in *Siemer v. Learjet Acquisition Corp., supra.* In *Cowan* the court distinguished *Curtis Publishing Co. v. Birdsong,* 360 F.2d 344 (5th Cir.1966) and other cases stating:

"In *Birdsong* and its progeny, the question is whether it is fair and reasonable to compel the defendant to come into the forum to defend the suit. Here, Ford has already come into Mississippi and voluntarily subjected itself to Mississippi process. It is agreed to be treated as a resident corporation. By appointing a resident agent and conducting substantial business in Mississippi, it has consented to Mississippi's exercise of personal jurisdiction." 694 F.2d at 107.

Thus, the court appeared to rely heavily on the fact that Ford had registered to do business in

Mississippi and had appointed an agent for service of process in Mississippi. In *Siemer* the court held that the registration to do business in the State of Texas and the appointment of an agent for service of process was "of no special weight in evaluating general personal jurisdiction." 966 F.2d at 181. The exact criteria the court in *Cowan* used to find jurisdiction is unclear. It could be reasonably argued that the court based its finding on the defendant's consent to the forum's jurisdiction by virtue of having registered to do business and appointing an agent for service of process. It could also be reasonably argued that the decision was based upon a "minimum contacts" analysis. Since it is not clear that the decision in *Cowan* is in direct conflict with the decision in *Siemer* this court is bound to follow the latter decision.

ter when the suit was filed. Therefore, *Ferens v. John Deere Co., supra* does not apply. Louisiana's one year statute of limitations is applicable. The plaintiffs' claims have prescribed.

Accordingly, IT IS RECOMMENDED that the defendants' Motions for Summary Judgment on the basis of prescription be GRANTED and that plaintiffs' claims against defendants be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. 636(b)(1)(C) the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE WILL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDS ON APPEAL.